UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LOUIS P. REGO,

                        Plaintiff,

        v.

MAIMONIDES MEDICAL CENTER,

                        Defendant.

Civil Action No.: 21-cv-__2448

Plaintiff Louis P. Rego ("Rego"), by the undersigned attorneys, alleges:

1. This civil action is brought under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, *et seq*. ("USERRA"). As set forth below, Defendant Maimonides Medical Center ("MMC") violated USERRA when it: (1) dismissed Rego from his position as an Operations Manager in MMC's Pharmacy Department because Rego was called twice by his country to active military service; and (2) retaliated against Rego for asserting his rights under USERRA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b).

3. Venue is proper in this judicial district under 38 U.S.C. § 4323(c)(2) because MMC maintains a place of business in this judicial district and is considered a "private employer" as defined in 38 U.S.C. § 4323(i). Additionally, venue is proper under 28 U.S.C. § 1391(b) because the events or omissions giving rise to this action occurred in this judicial district.

**PARTIES**

4. Plaintiff Rego resides in Perth Amboy, New Jersey. Rego has been a member of the United States Army Reserves ("Army Reserves") since 2001. He currently holds the rank of Lieutenant Colonel (O5). Rego was employed as a Pharmacy Operations manager at MMC from April 19, 2016 until November 21, 2017, when MMC terminated his employment.

5. Defendant MMC is a 711-bed hospital, the largest in Brooklyn. MMC also is one of the largest teaching hospitals in the country, and is a major clinical training site for the SUNY Downstate College of Medicine. MMC is an affiliate of Northwell Health, New York's largest health care provider and private employer, with a network of 23 hospitals and 665 outpatient facilities. MMC employs approximately 6,500 people, including over 100 employees in its Pharmacy Department. MMC maintains a place of business at 4802 Tenth Avenue, Brooklyn, New York, 11219, within the jurisdiction of this Court.

6. Defendant MMC is an "employer" within the meaning of 38 U.S.C. § 4303(4)(A), and is subject to suit under USERRA under 38 U.S.C. § 4323(a).

**FACTUAL ALLEGATIONS**

7. MMC hired Rego in April 2016 as an Operations Manager in the Pharmacy Department. In that role, he supervised the Pharmacy Department staff, including lead pharmacists, staff pharmacists, pharmacy technicians, pharmacy residents and interns. He also was responsible for creating the daily worksheet, which specified the tasks for each day and assigned those tasks to Pharmacy Department staff.

8. As Operations Manager, Rego worked under the direct supervision of Associate Directors Roberta Aguglia ("Aguglia") and Snapper Romano ("Romano"), who, in turn, reported directly to Fred Cassera, the Director of Pharmacy.

9. From the day Rego started work at MMC on April 19, 2016 through September 12, 2016, when he was called up to active duty military service, he never received a negative performance review from his supervisors. To the contrary, Rego received a formal, post-probationary period review from Aguglia and Romano in which they gave him a positive performance evaluation and told Rego he was doing well for a new manager.

**Rego's First Call to Duty**

10. In September 2016, Rego was ordered to full time active duty in the Army Reserves (his "First Call to Duty"). Rego took a leave of absence from MMC in order to serve as a Program Logistics Officer, supporting the US Army Medical Materiel Agency ("USAMMA") at Fort Detrick in Maryland, from approximately September 12, 2016 until April 24, 2017.

11. Immediately after Rego returned from his First Call to Duty on April 24, 2017, Aguglia began treating him poorly, including by harshly criticizing him in front of Department staff, and Aguglia and Romano began a concerted effort to oust Rego from his position.

12. Among other things, Aguglia and Romano issued Rego a series of "write-ups" in quick succession, assessing unwarranted criticism of his work. Those write-ups began just two days after Rego's return from his First Call to Duty and continued for the next five weeks, culminating on June 1, 2017, when Rego was called into Romano's office and presented with a memorandum (the "June 1 Write-Up"), which concluded that "we do not believe that this situation is suitable for Louis Rego."

13. Additionally, at various times during the month of May 2017, Aguglia and Romano made comments to Rego indicating that they resented the competing demands posed by his job at MMC and his military service and deemed his responsibilities to the Army Reserves incompatible with his Pharmacy job.

3

14. A few days after the June 1 Write-Up, Rego was called into a meeting with Aguglia, Romano and Cassera, during which Romano said that he soon would be terminated.

15. In response to Romano's threat of termination, on June 12, 2017, Rego filed a complaint with the United States Department of Labor Veterans Employment and Training Service ("VETS") for violation of USERRA.

16. Shortly after Rego filed his first USERRA complaint, Cassera called him into a meeting, told him to forget what Romano said, and assured him that he would not be fired. Believing that Cassera was honestly attempting to resolve the situation, Rego withdrew his USERRA complaint.

### Rego's Second Call to Duty

17. Rego was ordered to full-time active duty with the U.S. Army Reserves for a second time on July 17, 2017, when he was deployed for a second tour of duty with USAMMA (his "Second Call to Duty").

18. As a result, Rego took a leave of absence from MMC in order to perform his military service from July 17 until October 2, 2017.

19. Rego returned to work at MMC following his Second Call to Duty on or about October 2, 2017.

20. Just seven weeks later, on November 21, 2017, Cassera informed Rego that his position was being eliminated, and that he was being terminated, as part of a hospital-wide reduction in force ("RIF") designed to save money at the hospital.

21. In reality, the RIF, as applied to Rego, was pretext for MMC management's discriminatory and retaliatory firing of Rego. Rego was the only employee of the more than 100 employees in the Pharmacy Department terminated as a result of the RIF.

22. The Pharmacy Department did not save any money by terminating Rego. After it fired Rego, MMC promoted and gave pay raises to two mid-level managers in order to cover some of Rego's duties, used non-managers to perform other duties, and paid those non-managers overtime. The Pharmacy Department significantly increased its overtime usage to account for the loss of Rego.

23. MMC also hired new Pharmacy Department employees immediately before and after it fired Rego, including a pharmacist whose pay closely approximated Rego's.

24. MMC also posted an opening for Rego's job on a job search website one week before it dismissed him in November 2017. The opening remained active online until January 2018.

25. On November 22, 2017, Rego filed his second USERRA complaint with VETS, stating that he was fired due to his military service because he was absent from work to perform his military service, in connection with his First and Second Calls to Duty, and in retaliation for previously exercising his rights under USERRA.

## CLAIMS FOR RELIEF

**Claim 1: Wrongful Termination in Violation of USERRA**

26. Rego repeats the factual allegations set forth in paragraphs 7-25.

27. Title 38 of the United States Code, Section 4311(a), provides that "[a] person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation."

5

28. MMC violated Section 4311(a) of USERRA and discriminated against Rego on the basis of his military service when it eliminated Rego's Operations Manager position and terminated him because of his membership in the Army Reserves, his absence from MMC to perform military service and his military service obligations.

29. Rego's military service was a motivating factor in MMC's decision to terminate his position.

30. MMC's violations of USERRA Section 4311 were willful under 38 U.S.C. § 4323(d)(1)(C). MMC showed reckless disregard for whether its conduct was prohibited by the provisions of USERRA, as illustrated, *inter alia*, by their retraction of their discriminatory attempt to terminate Rego in June 2017 after Rego filed a USERRA complaint.

31. Because of MMC's actions in violation of USERRA, Rego has suffered a substantial loss of earnings and other benefits in an amount to be proven at trial.

**Claim 2: Retaliation against Rego in Violation of USERRA**

32. Rego repeats the factual allegations set forth in paragraphs 7-31.

33. USERRA, 38 U.S.C. § 4311(b), provides that "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded any person under this chapter . . . or . . . has exercised a right provided for in this chapter."

34. MMC violated Section 4311(b) of USERRA when it terminated Rego in retaliation for: (1) exercising his rights under USERRA in June 2017; and (2) making a complaint and offering statements to VETS in connection with MMC's threat to fire him in June 2017.

35. Rego's exercise of his rights under USERRA and/or his complaint and statements to VETS were motivating factors in MMC's decision to terminate his position.

36. MMC's violations of USERRA Section 4311(b) were willful under 38 U.S.C. § 4323(d)(1)(C).

37. Rego has suffered a substantial loss of earnings and other benefits in an amount to be proven at trial as a result of MMC's violations of USERRA.

38. Because of MMC's actions in violation of USERRA, Rego has suffered a substantial loss of earnings and other benefits in an amount to be proven at trial.

**Claim 3: Failure to Properly Retain in Violation of USERRA**

39. Rego repeats the factual allegations set forth in paragraphs 7-38.

40. Pursuant to 38 U.S.C. § 4316(c)(2), USERRA provides that "a person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause . . . within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days."

41. MMC violated Section 4316 of USERRA (i) by discharging him from his employment at MMC on November 21, 2017, which was less than 180 days after his reemployment on October 2, 2017 following his Second Call to Duty.

42. Rego's military service was a motivating factor in MMC's decision to terminate his position.

43. Rego's discharge was not for cause, in that the RIF was pretextual as applied to Rego.

44. MMC's violations of USERRA Section 4316 were willful under 38 U.S.C. § 4323(d)(1)(C).

45. Rego has suffered a substantial loss of earnings and other benefits in an amount to be proven at trial as a result of MMC's violations of USERRA.

7

## **PRAYER FOR RELIEF**

WHEREFORE, Rego prays that the Court enter judgment against MMC and, further, grant him the following relief:

A. Declare that MMC's elimination of Rego's Operations Manager position and termination of his employment were unlawful and in violation of USERRA;

B. Declare that MMC's retaliation against Rego for exercising his rights under USERRA were unlawful and in violation of USERRA;

C. Declare that MMC's failure or refusal to properly retain Rego following his military leave was unlawful and in violation of USERRA;

D. Order MMC to comply fully with the provisions of USERRA by reinstating Rego in an appropriate position;

E. Order MMC to comply fully with the provisions of USERRA by paying Rego for his lost wages and other benefits suffered by reason of MMC's violations of USERRA;

F. Declare that MMC's violations of USERRA were willful;

G. Award Rego liquidated damages in an amount equal to the amount of his lost wages and other benefits suffered by reason of MMC's willful violations of USERRA, as authorized under 38 U.S.C. § 4323(d)(1)(C);

H. Award prejudgment interest on the amount of lost wages and benefits due;

I. Enjoin MMC from taking any action with respect to Rego that fails to comply with USERRA; and

J. Grant such other and further relief as may be just and proper together with the costs and disbursements of this lawsuit.

## **JURY DEMAND**

Rego hereby demands a jury trial under Federal Rule of Civil Procedure 38.

Date: May 3, 2021

                Respectfully submitted,

                MARK J. LESKO
                Acting United States Attorney
                Eastern District of New York
                *Counsel for Plaintiff*

BY:

                SEAN P. GREENE-DELGADO
                Assistant United States Attorney
                United States Attorney's Office
                Eastern District of New York
                271-A Cadman Plaza East, 7th Floor
                Brooklyn, New York 11201
                (718) 254-6484
                Sean.Greene@usdoj.gov